# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

THOMAS C. SCHUSTER,                    ) 1:10-cv—01983-AWI-SKO-HC
                                       )
                    Petitioner,        ) FINDINGS AND RECOMMENDATIONS TO
                                       ) GRANT RESPONDENT'S MOTION TO
                                       ) DISMISS THE PETITION
         v.                            ) (DOCS. 10, 1)
                                       )
KEN CLARK, Warden,                     ) FINDINGS AND RECOMMENDATIONS
                                       ) TO DISMISS THE PETITION WITHOUT
                    Respondent.        ) LEAVE TO AMEND, TO DECLINE TO
                                       ) ISSUE A CERTIFICATE OF
_____) APPEALABILITY, AND TO DIRECT THE
                                         CLERK TO CLOSE THE CASE

        Petitioner is a state prisoner proceeding pro se and in
forma pauperis with a petition for writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  The matter has been referred to the
Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local
Rules 302 and 304.  Pending before the Court is Respondent's
motion to dismiss the petition filed on January 28, 2011.  On
February 7, 2011, Petitioner filed objections, which were deemed
to be his opposition to the motion.  Respondent did not file a
reply.

        I.  <u>Proceeding pursuant to Respondent's Motion to Dismiss</u>

        Because the petition was filed after April 24, 1996, the

1

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Rule 4 of the Rules Governing Section 2254 Cases (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules. <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same). Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4

1  standards to review a motion to dismiss filed before a formal

2  answer.  <u>See</u>, <u>Hillery</u>, 533 F. Supp. at 1194 & n.12.

3      In this case, upon being directed to respond to the petition

4  by way of answer or motion, Respondent filed the motion to

5  dismiss.  The material facts pertinent to the motion are

6  contained in the pleadings and in copies of the official records

7  of state parole and judicial proceedings which have been provided

8  by the parties, and as to which there is no factual dispute.

9  Because Respondent's motion to dismiss is similar in procedural

10  standing to motions to dismiss on procedural grounds, the Court

11  will review Respondent's motion to dismiss pursuant to its

12  authority under Rule 4.

13      II.  <u>Background</u>

14      In the verified petition, Petitioner alleges that he is an

15  inmate of the California Substance Abuse Treatment Facility

16  (CSATF) at Corcoran, California, serving a sentence of seventeen

17  (17) years to life imposed by the San Bernardino County Superior

18  Court upon Petitioner's conviction in November 1989 of second

19  degree murder with use of a firearm in violation of Cal. Pen.

20  Code §§ 187 and 12022.5.  (Pet. 1.)

21      Petitioner challenges the decision of California's Board of

22  Parole Hearings (BPH) made after a hearing held on January 30,

23  2009, finding Petitioner unsuitable for parole and denying parole

24  for three years.  (Pet. 4, 10, 135.)  He also challenges the

25  BPH's miscellaneous decision to schedule Petitioner's next parole

26  hearing in one year instead of three years, and the decisions of

27  the state courts upholding the BPH's denial of parole.

28      Petitioner submitted with his petition the transcript of

Petitioner's parole hearing held on January 30, 2009.  (Pet. 61-154.)  The transcript reflects that Petitioner attended the hearing (pet. 61, 63), received all pertinent documents before the hearing and had an opportunity to correct or clarify anything in his records (pet. 66, 68), discussed various factors of parole suitability with the board (pet. 69-120), and declined to give a personal statement in his own behalf (pet. 131).  An attorney appeared on Petitioner's behalf and made a statement in favor of parole.  (Pet. 61, 67-68, 103, 124-31.)

Petitioner was also present when the BPH stated its reasons for concluding that Petitioner posed a present risk of danger to society and a threat to public safety if released, which included the commitment offense that BPH characterized as cold-blooded; Petitioner's prior criminality; his minimization of his role in the offense and lack of insight; his lack of credibility in describing the commitment offense; and the prosecutor's opposition to Petitioner's release.  (Pet. 135-53.)

Petitioner further complains of action taken by the BPH on April 20, 2009, modifying from three years to one year the period of time before another parole hearing would be held.  (Pet. 35-36, 57-60).  In that decision, the BPH relied on the following: the commitment offense had been carried out in a dispassionate and calculated manner; Petitioner's insistence that the victim had threatened him and was pulling a knife when Petitioner fired his shotgun; and Petitioner's failure to understand the nature and magnitude of his offense and to demonstrate insight and remorse.  (Pet. 58-59.)  Petitioner argues that in the modified decision, the BPH relied on factors that had not been the subject

4

1   of findings at the principal parole hearing held in January.

2   Further, he argues that there is an absence of some evidence in

3   the record to support the findings that the offense was carried

4   out in a dispassionate and calculated manner and that Petitioner

5   failed to demonstrate insight or remorse.  (Pet. 36-39.)

6   Petitioner cites state case law to support his arguments.

7   Petitioner argues that pursuant to Cal. Code of Regs., tit. 15,

8   § 2041(h), Petitioner and his appointed attorney should have been

9   given an opportunity to respond in writing before the

10  miscellaneous decision became final.

11       In his opposition, Petitioner admitted that he was given an

12  opportunity to be heard at his parole hearing but denies that he

13  was given a valid statement of reasons for the decision.

14  Petitioner argues that the BPH's recitation of standardized

15  suitability factors and rote statement of the facts of the crime

16  were insufficient reasons according to state court decisions

17  concerning the appropriate application of the parole laws. (Doc.

18  11, 1-2.)

19       Petitioner lists the following claims in the petition: 1)

20  there was no record evidence of current dangerousness before the

21  BPH, and thus its finding of unsuitability was not supported by

22  some evidence; 2) the BPH's reliance on unchanging factors was

23  insufficient because the evidence was stale and unreliable; 3)

24  the use of facts not found by a jury or admitted to by Petitioner

25  violates Petitioner's understanding of his plea agreement; and 4)

26  the state courts' rulings affirming the BPH's decision were

27  unreasonable determinations of the facts in light of the

28  evidence.  (Pet. 4-5.)  The Court notes that Petitioner also

appears to allege in his third claim that the BPH's reliance on facts not admitted by Petitioner in his guilty plea or found by a jury violated his rights to due process under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  (Pet. 33-35.)

Petitioner seeks an evidentiary hearing and an order directing his release from custody.  (Pet. 42-43.)

III.  <u>Failure to State a Cognizable Due Process Claim concerning the Evidence</u>

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. <u>Swarthout v. Cooke</u>, 562 U.S. -, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination do not include the full panoply of rights available to a person facing criminal charges.  Instead, the procedures required for discretionary parole suitability proceedings are the minimal requirements set forth in <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[1]  <u>Swarthout v.</u>

---

[1] In <u>Greenholtz</u>, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. <u>Id.</u> at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. <u>Id.</u> at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. <u>Id.</u> at 9.  Further, the discretionary decision to release one on parole does not involve restrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations

6

Cooke, 131 S.Ct. 859, 862.   In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.   The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.   (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.   In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.   The Court concluded that the petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.   The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the Federal Due Process Clause.   Id. at 862-63.

     Here, in his first and second claims, Petitioner argues that there was a lack of some evidence to support the BPH's finding of unsuitability.   Thus, in these claims, Petitioner asks this Court

demonstrating why he was an appropriate candidate for parole.   Id. at 15.

1  to engage in the very type of analysis foreclosed by <u>Swarthout</u>.
2  Petitioner does not state facts that point to a real possibility
3  of constitutional error or that otherwise would entitle
4  Petitioner to habeas relief because California's "some evidence"
5  requirement is not a substantive federal requirement.  Review of
6  the record for "some evidence" to support the denial of parole is
7  not within the scope of this Court's habeas review under 28
8  U.S.C. § 2254.

9      Petitioner cites state law concerning the granting of
10 parole, the procedures to be followed in connection with parole
11 applications, and the appropriate weight to be given to evidence
12 concerning factors of parole suitability.  To the extent that
13 Petitioner's claim or claims rest on state law, they are not
14 cognizable on federal habeas corpus.  Federal habeas relief is
15 not available to retry a state issue that does not rise to the
16 level of a federal constitutional violation.  <u>Wilson v. Corcoran</u>,
17 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502
18 U.S. 62, 67-68 (1991).  Alleged errors in the application of
19 state law are not cognizable in federal habeas corpus.  <u>Souch v.</u>
20 <u>Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).

21     Petitioner complains of the absence of some evidence to
22 support the BPH's later modification of the decision to shorten
23 the time before Petitioner's next suitability hearing.  In this
24 respect, Petitioner raises the same types of non-cognizable
25 claims, namely, arguments concerning the weight given to the
26 evidence and the sufficiency of the evidence to support the BPH's
27 decision.  These claims concern whether or not there was "some
28 evidence" to support the BPH's decision.  They are subject to

dismissal for the same reasons as those supporting dismissal of the claims concerning the evidence supporting the BPH's initial decision.  Further, Petitioner does not show that he suffered any prejudice from the later decision.

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440 F.2d 13, 14 (9th Cir. 1971).  Here, it is apparent from the allegations in the petition that Petitioner attended the parole suitability hearing and spoke with the commissioners; he thus had an opportunity to be heard.  Further, he received a statement of reasons for the decision of the BPH.  Thus, Petitioner's own allegations and documentation establish that he received all process that was due.  It, therefore, does not appear that Petitioner could state a tenable due process claim.

Accordingly, it will be recommended that with respect to Petitioner's first and second due process claims concerning the evidence supporting the BPH's decisions, the Respondent's motion to dismiss the petition be granted, and Petitioner's due process claims concerning the evidence be dismissed without leave to amend.

IV.  <u>Claim concerning Petitioner's Plea Agreement</u>

Respondent's motion to dismiss addresses only Petitioner's due process claims concerning the "some evidence" standard.  The Court proceeds to consider the adequacy of Petitioner's additional claims pursuant to the authority conferred by the Habeas Rules, which permit the Court to dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule

4, pursuant to a respondent's motion to dismiss, or after an answer to the petition has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

In his third claim, Petitioner argues that the BPH's use of facts not found by a jury or admitted by Petitioner violated Petitioner's understanding of the plea agreement he made with respect to the commitment offense.  Petitioner alleges that he pled guilty to second degree murder, but the plea agreement did not contain descriptions of Petitioner's offense that were relied on by the BPH as reasons for finding Petitioner unsuitable.  The descriptions to which Petitioner refers are the BPH's characterizations of the commitment offense as "calculated and dispassionate," and of Petitioner's motive for the crime as "inexplicable."  (Pet. 5.)

Petitioner also alleges that being denied parole after twenty years of doing all that was asked of him by the BPH and all he could do to rehabilitate himself is contrary to what Petitioner reasonably understood when entering into his plea agreement, and thus it is a denial of due process.  (Pet. 35.)

Petitioner alleges that his plea bargain stipulated that his offense would be treated solely as a second degree murder, which by definition is a crime that lacks premeditation and deliberation.  Petitioner appears to allege that because he pled guilty to second degree murder, an offense which permits a grant of parole, he cannot be punished as he would be punished for first degree murder.  One reason why he chose to plead guilty was to avoid the possibility of a longer sentence; because he has

been found unsuitable for parole, Petitioner has not received what he bargained for when he pled guilty. (Pet. 32-33.) Had Petitioner pled to first degree murder, he would have already satisfied the custody requirement for such a conviction. (Pet. 35.)

A.   Background

The declaration of Petitioner executed on November 17, 1989, in the trial court in connection with the change of his plea to guilty reflects that Petitioner pled guilty to second degree murder with personal use of a firearm. (Pet. 259.) He declared that he understood that the maximum punishment he could receive for each crime was as follows: for second degree murder, fifteen years in state prison to life in state prison; and for use of a firearm, two years in state prison. Id. Petitioner declared that he also understood that any state prison commitment would be followed by a period of parole of three to four years. (Id.) He declared that he freely and voluntarily pled guilty because he was guilty, and/or because he had been advised of risking the possibility of a longer sentence or conviction of more serious charges, and/or because the District Attorney and the court had agreed to a plea of second degree murder with an admission of personal use of a firearm. (Id. at 260.) In the declaration, Petitioner stated:

> Except as otherwise stated herein, no one has promised or suggested to me that I will receive a lighter sentence, probation, reward, immunity or anything else to get me to plead guilty/nolo contendere (no contest) as indicated.

(Pet. 260.) Petitioner also declared that his attorney had explained everything in the declaration to him with sufficient

11

time for Petitioner to consider it.  (Id.)  His attorney likewise declared that he had explained the contents of the declaration to Petitioner.  (Id.)

### B.  Analysis of the Terms of Petitioner's Plea Bargain

A criminal defendant has a due process right to enforce the terms of his plea agreement.  Promises from the prosecution in a plea agreement must be fulfilled if they are significant inducements to enter into a plea.  Santobello v. New York, 404 U.S. 257, 262 (1971); Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006).  Plea agreements are contractual in nature and are measured by contract law standards.  United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993).  In construing a plea agreement, a court must determine what the defendant reasonably believed to be the terms of the plea agreement at the time of the plea.  United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).

The construction of a state court plea agreement is a matter of state law, and federal courts will defer to a state court's reasonable construction of a plea agreement.  Ricketts v. Adamson, 483 U.S. 1, 6 n.3 (1987); Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006).  In California, a negotiated plea agreement is a form of contract and is interpreted according to general contract principles and according to the same rules as other contracts.  Buckley v. Terhune, 441 F.3d 688, 695 (citing People v. Shelton, 37 Cal.4th 759, 767 (2006) and People v. Toscano, 124 Cal.App.4th 340, 344 (2004)).

In California, the plain meaning of an agreement's language must first be considered.  If the language is ambiguous, it must

be interpreted by ascertaining the objectively reasonable
expectations of the promisee at the time the contract was made.
Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006).  If
ambiguity remains after a court considers the objective
manifestations of the parties' intent, the language of the
contract should be interpreted most strongly against the party
who caused the uncertainty to exist, or in favor of the
defendant.  Id. at 695-96.

     Here, Petitioner fails to allege facts that would entitle
him to habeas relief.  His own petition states that he was
sentenced to "17 years-to-life" for second degree murder with use
of a firearm.  (Pet. 1.)  Petitioner does not show that his plea
agreement included any term or condition concerning parole, the
parole period, Petitioner's eligibility for parole, or release on
parole.

     Petitioner's conclusional allegations are not supported by a
statement of specific facts and thus do not warrant habeas
relief.  See, James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).
Petitioner fails to show that state authorities' finding that
Petitioner was not suitable for parole was inconsistent with, or
violated, Petitioner's plea agreement.

     Petitioner asserts that his continued confinement is
inconsistent with his expectation of any benefit from his plea
bargain.  He asserts that being denied parole after having done
all that was asked of him by the BPH for twenty years is contrary
to his expectations concerning his plea.  However, by his
bargain, Petitioner avoided the certainty of a more severe
sentence for first degree murder.  (Pet. 33.)  Further,

1  Petitioner has not alleged specific facts showing that an actual
2  grant of parole was the subject of a promise exchanged in the
3  bargain; he has alleged facts supporting only a generalized
4  expectation of the possibility of release on parole.

5  Petitioner has not shown that his plea agreement was
6  ambiguous in any respect.  A sentence of seventeen (17) years to
7  life clearly denotes confinement to endure for a minimum of
8  seventeen years and potentially as long as the sentenced person
9  lives.  This is consistent with California law, pursuant to which
10 it is established that an indeterminate life sentence is in legal
11 effect a sentence for the maximum term of life.  People v. Dyer,
12 269 Cal.App.2d 209, 214 (1969).

13 Generally, a convicted person serving an indeterminate life
14 term in state prison is not entitled to release on parole until
15 he is found suitable for such release by the Board of Parole
16 Hearings (previously, the Board of Prison Terms).  Cal. Pen. Code
17 § 3041(b); Cal. Code of Regs., tit. 15, § 2402(a).  Under
18 California's Determinate Sentencing Law, an inmate such as
19 Petitioner who is serving an indeterminate sentence for murder
20 may serve up to life in prison, but he does not become eligible
21 for parole consideration until the minimum term of confinement is
22 served.  In re Dannenberg, 34 Cal.4th 1061, 1078 (2005).  The
23 actual confinement period of a life prisoner is determined by an
24 executive parole agency.  Id. (citing Cal. Pen. Code § 3040).

25 Here, there is no basis for a conclusion that at the time
26 the plea was entered, objective manifestations of intent
27 reflected that Petitioner reasonably understood that he was
28 entitled to release on parole at any particular point in his

1   indeterminate sentence.  The facts do not warrant a conclusion
2   that the indeterminate sentence imposed was anything other than a
3   sentence for the maximum term of life, with a possibility of
4   release on parole after seventeen (17) years if Petitioner were
5   found suitable for such release.

6       Any rejection by state courts of Petitioner's claim was not
7   contrary to, or an unreasonable application of, clearly
8   established Supreme Court precedent, and it was not based on an
9   unreasonable determination of the facts.  See, 28 U.S.C.
10  § 2254(d).  Petitioner has not shown that a state court failed to
11  apply clearly established precedent of the United States Supreme
12  Court.  Further, it would have been reasonable for the state
13  court to have determined that Petitioner had simply shown that he
14  bargained for a term of seventeen (17) years to life with only
15  the "possibility" of release on parole.  See, Ricketts v.
16  Adamson, 483 U.S. 1, 6 n.3 (1987).  To the extent Petitioner
17  relies on state regulations or statutes that permit discretionary
18  release after a shorter period of time than Petitioner has been
19  confined, Petitioner's claim is based on the application of state
20  law and thus does not entitle Petitioner to relief.

21      The record of the pertinent proceedings involving
22  Petitioner's change of plea before the Court does not contain any
23  evidence of a promise concerning parole release.  It, therefore,
24  does not appear that Petitioner could allege a tenable due
25  process claim concerning his plea if leave to amend were granted.
26  Accordingly, it will be recommended that Petitioner's due process
27  claim concerning his plea bargain be dismissed without leave to
28  amend.

1        C.   <u>Apprendi Claim</u>

2        In his third claim, Petitioner argues that he suffered an

3   Apprendi[2] violation because the BPH made findings of fact

4   concerning the circumstances and nature of the commitment offense

5   that were not either found by a jury beyond a reasonable doubt or

6   admitted by Petitioner in connection with his plea.   Petitioner

7   contends that when he was found unsuitable, he was exposed to

8   punishment exceeding the statutory maximum for first or second

9   degree murder.  (Pet. 33.)

10       Petitioner asserts that Blakely v. Washington, 542 U.S. 296

11  (2004) held that the statutory maximum punishment for second

12  degree murder is a minimum term of fifteen (15) years if based

13  solely on facts reflected in a jury's verdict or admitted by the

14  defendant.  He argues that because he did not expressly admit the

15  BPH's findings concerning the nature of his commitment offense

16  when he entered his plea, the findings violate his due process

17  rights.  Petitioner also cites Ring v. Arizona, 536 U.S. 584

18  (2002), which held that a trial judge's determination of the

19  presence or absence of aggravating or mitigating factors that

20  govern the choice of the death penalty was a violation of the

21  defendant's Sixth and Fourteenth Amendment right to a trial by

22  jury in capital prosecutions.

23       In Apprendi, the Court held that any fact other than a

24  prior conviction that is necessary to support a sentence

25  exceeding the maximum authorized by the facts established by a

26  plea of guilty or a jury verdict must be admitted by a defendant

27

28       [2] The reference is to Apprendi v. New Jersey, 530 U.S. 466 (2000).

1   or proved to a jury beyond a reasonable doubt.  <u>Apprendi v. New</u>

2   <u>Jersey</u>, 530 U.S. 466, 490; <u>United States v. Booker</u>, 543 U.S. 220,

3   244 (2005).  In <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004),

4   the Court held that the "statutory maximum for <u>Apprendi</u> purposes

5   is the maximum sentence a judge may impose solely on the basis of

6   the facts reflected in the jury verdict or admitted by the

7   defendant." <u>Blakely</u>, 542 U.S. at 303.

8        Cal. Pen. Code § 190(a) provides generally that first degree

9   murder is punishable by death or imprisonment for twenty-five

10   (25) years to life; second degree murder is punishable by

11   imprisonment for fifteen (15) years to life.  As previously

12   noted, in California, an indeterminate sentence of fifteen years

13   to life is in legal effect a sentence for the maximum term of

14   life, subject only to the power of the parole authority to set a

15   lesser term.  <u>People v. Dyer</u>, 269 Cal.App.2d 209, 214 (1969).

16        Based on the foregoing, the Court concludes that in denying

17   parole, the BPH did not increase Petitioner's sentence beyond the

18   statutory maximum of life imprisonment for second degree murder.

19   The Court is mindful of the discretionary and predictive nature

20   of the evaluations made by the BPH in considering release of an

21   inmate on parole.  <u>See</u>, <u>Greenholtz v. Inmates of Nebraska Penal</u>

22   <u>and Corr. Complex</u>, 442 U.S. 1, 9-10 (1979).  The Court is not

23   aware of any Supreme Court authority applying the principles of

24   <u>Apprendi</u> to parole proceedings.  The Court notes that Petitioner

25   was not entitled to a jury trial or proof beyond a reasonable

26   doubt in his parole proceedings.  <u>United States v. Knights</u>, 534

27   U.S. 112, 120 (2001) (no right to jury trial or proof beyond a

28   reasonable doubt in proceedings to revoke probation); <u>United</u>

States v. Huerta-Pimentel, 445 F.3d 1220, 1225 (9th Cir. 2006) (a judge's finding by a preponderance of the evidence that a defendant violated the conditions of supervised release does not raise a concern regarding the Sixth Amendment); see, Swarthout v. Cooke, 131 S.Ct. at 862.  Instead, Petitioner was entitled to the relatively minimal processes of Greenholtz.  Thus, Apprendi, which concerns a right to jury trial and proof beyond a reasonable doubt to a jury, does not appear to be applicable to parole proceedings.

The Court concludes that Petitioner did not allege facts that would entitle him to relief on the basis of a denial of due process of law from the absence of a jury trial or jury finding concerning the circumstances of his offense.  Further, in light of the apparent inapplicability of the Apprendi concepts to parole proceedings, it does not appear that Petitioner could allege a tenable Apprendi claim for relief.

Thus, it will be recommended that Petitioner's due process claim relating to the Apprendi decision be dismissed without leave to amend.

V.   Decisions of the State Courts

In his fourth claim, Petitioner alleges that the state courts' rulings affirming the BPH's decision were unreasonable determinations of the facts in light of the evidence.

In this claim, Petitioner appears to challenge the state court's decisions upholding the BPH's determinations of fact. However, as the preceding discussion of the Swarthout case reflects, the application of the "some evidence" rule to the facts relevant to parole eligibility is not within the scope of

this Court's review in a proceeding pursuant to 28 U.S.C. § 2254. Accordingly, the Court concludes that with respect to his fourth claim concerning unreasonable determinations of fact, Petitioner has failed to state facts entitling him to relief.  Because the claim is not cognizable in a proceeding pursuant to 28 U.S.C. § 2254, it will be recommended that the claim be dismissed without leave to amend.

In sum, the Court concludes that with respect to all the claims set forth in the petition, Petitioner has failed to state facts that entitle him to relief or point to a real possibility of constitutional error.  Thus, it will be recommended that Respondent's motion to dismiss the petition without leave to amend be granted and the petition be dismissed without leave to amend.

VI.   <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

certificate should issue if the Petitioner shows that jurists of
reason would find it debatable whether the petition states a
valid claim of the denial of a constitutional right and that
jurists of reason would find it debatable whether the district
court was correct in any procedural ruling.  Slack v. McDaniel,
529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of
the claims in the habeas petition, generally assesses their
merits, and determines whether the resolution was debatable among
jurists of reason or wrong.  Id.  It is necessary for an
applicant to show more than an absence of frivolity or the
existence of mere good faith; however, it is not necessary for an
applicant to show that the appeal will succeed.  Miller-El v.
Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of
appealability when it enters a final order adverse to the
applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.
It does not appear that reasonable jurists could debate whether
the petition should have been resolved in a different manner.
Petitioner has not made a substantial showing of the denial of a
constitutional right.

Therefore, it will be recommended that the Court decline to
issue a certificate of appealability.

VII.  Recommendation

Accordingly, it is RECOMMENDED that:

1) Respondent's motion to dismiss without leave to amend
Petitioner's first and second due process claims concerning some
evidence be GRANTED; and

20

2) Petitioner's third and fourth claims be DISMISSED without leave to amend; and

3) The petition for writ of habeas corpus be DISMISSED without leave to amend; and

4)  The Court DECLINE to issue a certificate of appealability; and

5) The Clerk be DIRECTED to close the case because an order of dismissal would terminate the action in its entirety.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   May 31, 2011          _____/s/ Sheila K. Oberto_____
                                  UNITED STATES MAGISTRATE JUDGE